350 So.2d 1169 (1977)
STATE of Louisiana
v.
Robert Earl YATES.
No. 59350.
Supreme Court of Louisiana.
October 10, 1977.
*1170 John A. Files, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., William L. Goode, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
On June 8, 1976 the grand jury of Caddo Parish indicted Robert Earl Yates for the crime of aggravated rape. La.Rev.Stat. 14:42. The charge was later amended to attempted aggravated rape. A jury of twelve unanimously found Yates guilty as charged, and he was sentenced to serve twenty years at hard labor. On this appeal he assigns thirteen errors for reversal of his conviction and sentence.

Assignment 1
Voir dire examination of the prospective jurors began at approximately eleven o'clock on the first day of trial and continued until noon. Court was then recessed for lunch until two o'clock. When Court reconvened after lunch, before the jury returned, defense counsel moved for a mistrial. He asserted that defendant wore prison clothes during the voir dire examination and these clothes were visible to all members of the jury. Relying upon the decision in Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), cert. denied, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971), counsel urged that defendant's appearance in prison garb was a violation of due process which destroyed the presumption of innocence to which defendant was entitled.
It was then pointed out by the prosecutor that during the voir dire examination that morning no objection was made that defendant was attired in prison garb. It was also noted that no recess was requested to change into civilian garb, and that defendant had, since the noon recess, changed into civilian clothes, precluding any subsequent cause for complaint.
In addition, photographs taken on a previous occasion were introduced depicting defendant in the same clothes worn by him during the morning court session. These photographs disclosed that there were no markings on his clothes which appeared to be an ordinary denim shirt and trousers not unlike the civilian clothes he then wore.
Notwithstanding this showing, defense counsel persisted, claiming that during the voir dire examination defendant's shoes were stamped with the large letters: "C.C. I.", identifying them as prison issue. Although he had not noticed these markings on defendant's shoes, the shoes having been changed during the noon recess, the trial judge was of the opinion that it would have been extremely difficult for any jurymen to see the markings. Defendant was in the dock, or seated virtually the whole time, and the jury was not in a position to see his shoes.
*1171 It was also noted by the trial judge that as a matter of policy the sheriff and officers at the prison allow defendants to appear at trial in the attire of their choice. Furthermore, the jail uniform was orange in contrast to the blue denim clothes worn by defendant.
In Hernandez v. Beto, 443 F.2d 634 (5th Cir. 1971), cert. denied, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971), no issue was raised concerning the nature of the defendant's attire at the trial. He was tried in his prison garb, described as a white T-shirt with "Harris County Jail" stamped on the front and dungarees with the same inscription on front and back.
In the instant case the record preponderates to the effect that defendant's clothes were not recognizable by the judge or jury as prison garb. The cases are therefore distinguishable on the facts. The trial judge properly denied defendant's motion for a mistrial based upon this Court's decision in State v. Thomas, 325 So.2d 593 (La. 1976), where in a similar situation the Court recognized that an accused may insist that he be brought into court with the appearance, dignity and self-respect of a free and innocent man. However, one asserting the deprivation of such right must establish a deprivation by clear and convincing evidence. State v. Kinchen, 290 So.2d 860 (La.1974) and State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). That burden has not been discharged here.
This assignment is without merit.

Assignment 2
Testimony at the trial disclosed that defendant joined the victim and her boy friend, Tommy Coker, in the early morning hours of September 6, 1975 at the Cotton Bowl Market in Shreveport. They set out together in Coker's car to a bar to buy beer. Finding the bar closed, defendant asked them for a ride home and directed Coker into the driveway of a deserted house in a sparsely settled residential neighborhood.
When Coker stopped the car, defendant reached across the victim, who was seated in the front seat between them, and struck Coker in the eye, thereafter pulling the victim from the car. A fight then ensued in which defendant overcame Coker and forced him away. Defendant then dragged the victim into a nearby wooded area and there forcefully attempted to rape her.
In the meantime Coker had summoned the police, and the first police car to arrive spotted defendant leading the victim down the road. As the patrol car approached, defendant fled. He was apprehended in Georgia nine months later.
After defendant was apprehended in Georgia, where he was first notified of his Miranda rights, he was returned to Shreveport, where he was again advised of his rights and interrogated by Detective Bill Strange on May 7, 1976. He gave a voluntary statement which was recorded and later transcribed and signed by him. In that statement he outlined his version of the meeting and an attempt by Coker and the victim to rob him. He said he paid Coker two dollars for a ride home, but Coker drove him to the driveway of the deserted house and, with the victim's help, attempted to rob him. According to the defendant he fought them in self-defense and fled. The interrogation continued:
"DET.: Ok. Ah, ROBERT, you ah stated these people attempted to rob you ah can you tell me why you didn't report this to the police?
ROBERT: Don't do me no good to report nothing to the police.
DET.: You want to explain that, ROBERT?
ROBERT: Well, it just don't do me no good. I got a pretty bad record down here and they don't believe nothing I say.
DET.: Ok. Where did you ah after you had gone home, how long did you stay in the city?
ROBERT: Up until I found out the police was looking for me for rape charge on the night that I tried to get robbed.
DET.: What did you do then?
ROBERT: Well that's when I hauled out.

*1172 DET.: Ok. Where did you go, ROBERT?
ROBERT: Well I went back to ah GEORGIA. I always, everytime they start looking for me I take off.
DET.: Ok and you were arrested in GEORGIA?
ROBERT: Right.
On voir dire examination of prospective jurors defense counsel repeatedly asked whether a previous conviction of a person on trial would influence their determination of guilt or innocence in the case at hand. At least fifteen questions touched upon this subject. In some instances a specific reference was made to whether a previous conviction of the defendant before the bar would influence the prospective juror's determination of guilt or innocence.
Later, during the trial, after laying the predicate to establish the free and voluntary character of the quoted statement, the State offered the recording and the transcribed version into evidence. At that time defendant took the stand in rebuttal and denied his signature to the notice and waiver of the Miranda rights forms which were executed in Georgia and upon arrival at the Shreveport police station. He acknowledged on cross-examination, however, that when he gave the statement he understood and waived his rights.
Although defendant contends that the statement was wholly exculpatory with the exception of the inadmissible evidence of his bad character, the contention is without merit. Obviously defendant intended to exculpate himself; however, by his own statement he was in the victim's company at the scene of the crime with a rather implausible account of the incident. Coker was twenty years old and his young female companion was fifteen. Coker was 5 feet, 10 inches tall and weighed 135 pounds. He was sickly and asthmatic. The girl was 5 feet, 3 inches tall and weighed 100 pounds. They could not be considered formidable opponents of defendant, who was 26 years of age, six feet tall and weighed 180 pounds. It is highly unlikely that they ran him off into the night as he stated. The conclusion, then, is that the statement must be regarded as an inculpatory statement governed by the rules relating to the admissibility of confessions. It is the content of the statement which is at issue, not its voluntary character.
Admission of the statement was objected to because the language was inflammatory and prejudicial in that it tended to show defendant's bad character, and he claimed it contained prohibited evidence of his arrest.
In considering the objection the trial judge observed, "Of course, the jury has been voir dired about the fact that the man has a previous conviction. They obviously know that by now." Defense counsel agreed: "They know of a previous conviction, yes, but they don't know about the other language."
Defense counsel's objections were aimed at certain utterances in the recorded statement, utterances relating to the circumstances surrounding defendant's claim that Coker and the young girl attempted to rob him. These are:
"That's when he tried to hit me with the co cola bottle and that's when I knocked him on his ass."

. . . . . .
"I knocked him down and then she hit me in the back with a pipe and I slapped her in some kind of ditch or something another."

. . . . . .
"Well, I hauled my butt then."
When asked by the Detective, "Okay, Robert, you stated these people attempted to rob you. Can you tell me why you didn't report this to the police?", defendant replied: "Don't do me no good to report nothing to the police."
Detective: "You want to explain that, Robert?"
Defendant: "Well, it just don't do me no good. I got a pretty bad record down here and they don't believe nothing I say."
Detective: "Okay . . . how long did you stay in the city?"
*1173 Defendant: "Up until I found out the police were looking for me for rape charge on the night that I tried to get robbed."

. . . . . .
Detective: "Okay. Where did you go, Robert?"
Defendant: "Well, I went back to Georgia. I always, everytime they start looking for me I take off."
Detective: "Okay. And you were arrested in Georgia?"
Defendant: "Right."
In brief to this Court defendant's objections are based upon the propositions that 1) evidence which has no tendency to prove some material connection with the offense charged, but merely tends to show that the defendant is a criminal, generally should be excluded, La.Rev.Stat. 15:481;[1] and 2) the credibility of a witness may not be impeached by asking whether he has been arrested. La.Rev.Stat. 15:495.[2]
While the language relating to the affray between defendant, Coker, and the victim is crude, it is not such that it would unduly inflame or prejudice today's jury.
References to the fact that the police were "looking" for him and that he "went back to Georgia" and that he was "arrested" in Georgia are all self-evident facts, necessary incidents of the case itself as they would be in any other case. Just as the law does not prohibit the State from showing that the defendant on trial was arrested or where he was arrested, it does not offend legality to prove that the police were looking for this defendant after the date of this offense. There is, moreover, nothing in defendant's statement which would lead the jury to conclude that the arrest mentioned was other than the arrest involved in the instant case.
Insofar as the reference to defendant's "bad record" is concerned, defense counsel, by repeated mention of prior convictions and his concession that the jury knew of a previous conviction, establishes that defendant did in fact have a "bad record" as a result of that conviction. To introduce defendant's own statement to the same effect neither offends the law nor adds to the prejudice already established by the jury's knowledge of defendant's previous conviction.

Assignments 3 and 4
These assignments were neither briefed nor argued and are considered abandoned.

Assignments 5 through 12
A violation of the defendant's due process right is claimed because of the State's refusal to order production of the criminal record of the victim and her father and mother. In addition defendant moved to discover "any criminal records" of witnesses; a list of all state witnesses and their addresses; statements of defendant; photographs, drawings or charts made and to be used by the State; results of scientific tests; papers, objects or real evidence in the possession of the police or District Attorney; and the defendant's own criminal records.
At the time of this trial in 1976 only limited discovery was permitted in this State. Defendant's statement was furnished to defense counsel in advance of trial; he could not require the State to produce the other information and evidence sought to be discovered.
*1174 "`As a general proposition the State is not required to produce the physical evidence it intends to use at the trial. Exceptions to this rule have recognized the right of a defendant to view and copy his written confession in the possession of the prosecutor, State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945); to obtain production of a taped confession, State v. Hall, 253 La. 425, 218 So.2d 320 (1969); or some of the confiscated narcotic evidence in a narcotic prosecution, State v. Migliore, 261 La. 722, 260 So.2d 682 (1970). When proper allegations support a finding that the defendant acted in self-defense and specifies that the weapon sought was used by the alleged victim against the defendant, supporting a claim of self-defense, we have required production of the weapon by the State. State v. Woodruff, 281 So.2d 95 (La.1973).' State v. Collins, 308 So.2d 263 (La.1975)." State v. Brumfield, 329 So.2d 181, 185 (1976).
These assignments are without merit.

Assignment 13
According to the defendant, the trial judge erred in receiving prejudicial hearsay testimony as res gestae. The testimony at issue is alleged to be that of the officers near the scene of the crime. Defendant asserts that they testified to statements made by the victim. These statements, it is contended, were prejudicial hearsay testimony improperly admitted as res gestae.
Although no reference to the page of the transcript is furnished in the assignment of error as the rules of this court require (La. Sup.Ct. Rules 1, § 6(d); 7, § 6), a search of the record discloses that a patrolman who questioned the victim shortly after the crime was asked by the prosecutor, "What did she say?" Defense counsel objected that the question called for hearsay. Despite the prosecutor's argument that the victim's declarations were part of the res gestae, the court sustained the objection. Thereafter no objection was made to questions propounded by the prosecutor.
This assignment has no merit.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., concurs.
NOTES
[1] La.Rev.Stat. 15:481:

"The state is permitted to introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character."
[2] La.Rev.Stat. 15:495:

"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."