404 So.2d 907 (1981)
STATE of Louisiana
v.
Ray ROBINSON.
No. 81-KA-0152.
Supreme Court of Louisiana.
September 28, 1981.
*908 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Stephen M. Little, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Raleigh Ohlmeyer, Plaquemine, for defendant-appellant.
COVINGTON, Justice ad hoc.[*]
Ray Robinson was charged by bill of information with two counts of armed robbery in violation of La.R.S. 14:64. After trial by jury, the defendant was found guilty on both counts and sentenced to five years at hard labor without benefit of probation, parole, or suspension of sentence, the sentences to run consecutively. On appeal, the defendant relies on twenty-four assignments of errors for reversal of his conviction and sentence.[1]

FACTS
The defendant was charged with armed robbery of Walgreen's Drug Store, located on Jefferson Highway in Jefferson Parish, on two occasions. On May 29, 1979, a black male walked into the Walgreen store and robbed the cashier, Gina Dubroc, of $77.00 *909 of the store's money. He escaped without apprehension. On June 15, 1979, a black male came into the same drug store and, in the presence of Ms. Dubroc, robbed the pharmacist, Carl Gordon, of $120.00 of the store's money. As the robber was fleeing the scene of the June crime on a bicycle, the store's security guard, Van Clark, who had just arrived for work, gave chase to the robber, who entered an apartment house about five blocks from the drug store. The police then arrived at the apartment house in response to a call. After obtaining the consent of the tenant of the apartment, Charlotte Hollins, the police searched the premises and found the suspect, who was in the process of changing clothes. After searching the apartment, the police took the defendant to Walgreen's, where he was identified by Ms. Dubroc and Mr. Gordon as the perpetrator of the crime.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge erred in denying his motion to suppress the in-field identification of the defendant. The basis for his contention is that this sort of identification denies an accused due process, because it is impermissibly suggestive, leading to a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In reviewing the constitutional issue of the identification procedure, the United States Supreme Court in Manson v. Brathwaite, supra at 432 U.S. 107, 97 S.Ct. at 2247, made a double inquiry:
(1) Did the police use an impermissibly suggestive procedure in obtaining the out-of-court (in-field) identification?
(2) If so, did that suggestive procedure, under all of the circumstances, give rise to a substantial likelihood of irreparable misidentification?
At the suppression hearing, the testimony revealed that the victims, Dubroc and Gordon, were shown the defendant in handcuffs immediately after his arrest following the June 15, 1979, robbery, and that they made a positive identification of the suspect.[2] The defense urges that the identifications at the scene were impermissibly suggestive because the defendant was handcuffed and in the custody of uniformed police officers when identification was sought by the arresting officers from the victims. The defense argues that these factors, considered with the statement of the officers that they believed the person in their custody to be the robber, established that the in-field or on-the-scene identifications should have been suppressed. Under similar circumstances, in State v. Dauzat, 364 So.2d 1000, 1002 (La.1978), this court considered the identification procedure constitutionally acceptable, and stated:
"Where, as in the instant case, a one-on-one in-field identification is closely associated in time with the commission of the crime and where the suspect is returned to the location of the crime for immediate identification, such identifications have been found permissible. State v. Kelly, 362 So.2d 1071 (La.1978). One reason for declining to disapprove such procedures is that they promote fairness by assuring reliability and the prompt release of innocent suspects. State v. Dunbar, 356 So.2d 956 (La.1978). Applying the totality of the circumstances rule set forth in Neil v. Biggers, supra [409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401] (more recently asserted by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 [1977]) we conclude that the record establishes the reliability of the in-field identifications."
We conclude that the record establishes the reliability of the in-field identifications. A review of the record reveals that Gina Dubroc, Carl Gordon and Van Clark had ample opportunity to view the suspect (both Dubroc and Gordon had been victims of robbery by the suspect and had witnessed to other robberies committed by the same person; Clark pursued the fleeing robber for several blocks and testified that he got a *910 good look at the suspect's face from a distance of one-half block and that the suspect conformed to the description furnished him by the assistant manager of the drug store); the witnesses were certain of the identification and positively and accurately identified Robinson; and, although the victims saw the subject only for a short period of time on each occasion, those occasions were such as to make a memorable impression on them. In addition, there was only a lapse of time of a few minutes between the last robbery and the apprehension and identification of the perpetrator of the crime. See State v. Stewart, 387 So.2d 1103 (La.1980). The Manson criteria are satisfied. This is not a case of an identification resulting from impermissible suggestions leading to a likelihood of misidentification. This is not a case of mistaken identity. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error the defendant argues that the trial court erred in failing to grant the defense motion to sever for trial the two counts of armed robbery contained in the bill of information.
In the present case the defendant was tried for two similar armed robberies of the same business establishment, Walgreen's drug store. The nature of the offenses was relatively uncomplicated and there were only two armed robberies with which the defendant was charged; consequently, there was little or no danger that the jury could not distinguish the evidence and intelligently apply the law to each offense. In addition, there was a close connexity in time (one month apart) and the same location between the crimes.
This court said in State v. Washington, 386 So.2d 1368, 1371 (La.1980), that in ruling on a motion for severance:
"...[T]he trial court must weigh the possibility of prejudice versus the important considerations of judicial economy and administration. In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. See Drew v. United States, 331 F.2d 85 (D.C. Cir. 1964); United States v. Weber, 437 F.2d 327 (3rd Cir. 1970)."
There is no prejudicial effect from joinder of the two offenses when the evidence of each offense is relatively simple and distinct, even though such evidence might not have been admissible in separate trials of the offenses; because, with a proper charge, the jury can easily keep the evidence of each offense separate in its deliberations. See Drew v. United States, 331 F.2d 85, 91 (D.C. Cir. 1964). Moreover, since the charges were for a violation of the same statute (La.R.S. 14:64), there should have been no confusion in the application of the law to the offenses. Under LSA-C. Cr.P art. 495.1, as amended by Act No. 466 of 1978, a severance need not be granted if other safeguards will effectively prevent the prejudicial effect of joinder. See State v. Washington, supra.
Applying these principles to the present case, we find that the trial court did not abuse its discretion in denying the motion for severance.
In the present case the trial judge gave the following instruction concerning the two-count charge against the defendant:
"The defendant at bar is charged under a two count indictment. Each count charges the defendant with a separate and distinct offense under the laws of Louisiana. In deliberating, you, the jury should consider the defendant's guilt or innocence as to each individual count independently and separately of all other counts of the indictment. Thus, it would be possible to render a verdict of guilt as to one count while returning a verdict of innocence as to the other count. It would also be possible to return a verdict of *911 guilt as to both or a verdict of innocence as to both counts if you so find."
This instruction makes it clear that the jury was to consider each count separately. There was little danger that the evidence of the two offenses was cumulated to the prejudice of the defendant. See State v. Thomas, 395 So.2d 802 (La.1981); State v. Labostrie, 358 So.2d 1243 (La.1978). We conclude that the jury could easily compartmentalize the evidence and apply the law intelligently as to each of the two offenses, and that the defendant was not unfairly convicted on the basis of prejudice or confusion. Hence, we find no error in the denial of the severance of charges against the defendant.
Assignment of Error No. 3 is without merit.

ASSIGNMENTS OF ERROR NOS. 4, 7 and 8
By these assignments of error the defendant contends that the trial judge erred in curtailing the defense's examination during voir dire. Specifically, the defense attempted to question prospective jurors concerning the effect of the power of suggestion on the accuracy of the witnesses' identification of the accused.
The questions which the judge refused to allow are as follows:
"Do you believe that it's possible for the power of suggestion to be used to create an identification? You think the police could or would do it?
* * * * * *
"You can understand that a person who has been through a traumatic experience like [that] might have trouble identifying a person?
* * * * * *
"And, you also accept the possibility that when the police do certain things, they might be using the power of suggestion. For example
* * * * * *
"During the course of this trial, if I can make you understand, make you believe that the police might have done something improper, might have done something suggestive, would you consider that? Let me give you an example of that:"
The trial court sustained the State's objection to the questions, finding that the subject matter was not relevant for purposes of voir dire examination since it neither tested the prospective jurors' competency or impartiality; but rather, was more suited to argument. See LSA-C.Cr.P. art. 786.[3]
The purpose of the voir dire examination is to select jurors who can render an impartial verdict. State v. Williams, 310 So.2d 528 (La.1975). Voir dire examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Bertrand, 381 So.2d 489 (La.1980).
In State v. Clark, 325 So.2d 802, 807 (La. 1976), this court stated:
"Voir dire examination is designed to test the competency and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at trial."
It is well established that the scope of the voir dire examination is within the sound discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a clear abuse of discretion. State v. Murray, 375 So.2d 80 (La.1979).
As set forth in State v. Vinet, 352 So.2d 684, 687 (La.1977):
"Undoubtedly the defense is entitled to wide latitude in examining prospective jurors. This right is, however, to be exercised within the discretion of the trial judge who determines the scope of the examination under the prevailing facts and circumstances. La.Code Crim.Pro. art. 786. And when the question arises whether voir dire examination has been unduly restricted, the disallowance of a *912 proper question is not automatically reversible. In evaluating the fairness of the ruling the entire examination must be considered. State v. Monroe, 329 So.2d 193 (La.1976); State v. Jones, 315 So.2d 650 (1975). (Emphasis supplied)"
A review of the voir dire examination reveals that prior to the State's objection to the disallowed questions, the defense had extensively examined other prospective jurors concerning their understanding of the power of suggestion. At one point the trial judge stated that "you can ask the jury any question you want about their faith in eyewitness identifications." There was no abuse of discretion by the trial judge when he curtailed the defense's voir dire examination. The argument of substantial error with regard to the voir dire does not support any claim of denial of due process.

ASSIGNMENT OF ERROR NO. 13
By this assignment of error the defendant contends that the trial court erred in permitting the introduction in evidence by the State of $94.00 cash, which was found in a chifforobe in the apartment where the defendant was apprehended. The defense asserts that this money was not shown to have been a part of the money allegedly taken in the robbery.
The State made no attempt to connect the evidence with the defendant, or to exploit the admission of the evidence in the argument of the prosecutor. Under similar circumstances, this court found that where there was no attempt to connect the evidence with the defendant, or to exploit the evidence by the State, the erroneous admission of the evidence was harmless error. State v. Manieri, 378 So.2d 931 (La.1979).
As in Manieri, reversible error did not occur under the facts of the present case. The jury heard testimony that certain sums of money were taken in the robberies, but there was no attempt made by the prosecutor to connect the money found in the chifforobe in the apartment where the defendant was apprehended with the June robbery of Walgreen's. No attempt was made by the State to exploit the admission of the $94.00 in argument by the prosecutor. We find there was little possibility that the money was associated with the robbery. In the absence of any such prejudice to the defendant, the admission of the money found in the apartment at the time of defendant's arrest was not reversible error. LSA-C.Cr.P. art. 921.
There is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 24
The defendant raised this assignment of error through a motion for new trial, contending that the State did not prove beyond a reasonable doubt that the defendant was armed with a dangerous weapon while committing the robberies.
The applicable law was definitively stated by this court in State v. Gould, 395 So.2d 647, 656 (La.1980), on rehearing:
"... If unarmed, defendant did not perpetrate an armed robbery. If armed with an instrumentality not inherently dangerous, he would not have qualified as having been armed with a dangerous weapon for he did not use the object in a manner likely to produce death or great bodily harm. Only if armed with an inherently dangerous weapon, whether displayed or not, would this defendant have been shown to be guilty of armed robbery. The question therefore in this case, did defendant have a pistol in his pocket (i.e. an inherently dangerous weapon) as opposed to a toy pistol or some other non-inherently dangerous instrumentality."
The Gould case accepted the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that all elements of the offense of armed robbery have been proved beyond a reasonable doubt.
In the instant case, looking at the evidence favorably from the State's viewpoint, there was direct evidence that Robinson was armed with a pistol, an inherently dangerous weapon, while committing the robbery on May 29, 1979. The victim, whose *913 testimony was believed by the jury, testified that the defendant ordered her to give him the money in the cash register, showed her his gun, and took the money from her.
Ms. Dubroc testified as follows:
"Q. And, if you would, when he started or when he asked you for the money, Ms. Dubroc, about how close was he to you, as close as I am to you now?
A. Yes, right up to the counter.
Q. Could he have reached out and touched you?
A. Uh huh. (Affirmative reply)
Q. From you, like as far as I am from you now?
A. Face to face, yeah.
Q. Face to face. Now, you mentioned a gun. Where did you first see the gun, Ms. Dubroc?
A. In his pants.
Q. Stuck in his pants?
A. Stuck in his pants, just like that. (Witness illustrating)
Q. Did he show you the gun, or how did you notice the gun?
A. He had opened his jacket and I saw the gun, and he took it out of his pants and held it up.
Q. He actually removed the gun?
A. Yeah, and held it.
Q. Did he point it at you, or did he just hold it?
A. No, he didn't point it at me, he just held it.
Q. Are you sure that it was a gun?
A. Yes.
Q. Did you give him the money before you saw the gun or after?
A. After.
Q. Did he take the money from you?
A. Yes."
With regard to the second count of armed robbery, Ms. Dubroc (who had been the victim of the May robbery) was a witness to the June robbery. She testified that it was the same man who had robbed her in May; that she heard the robber ask for money from the pharmacist and unzip a bag, although she did not testify to actually seeing the gun in June. Carl Gordon, the pharmacist, testified that he was robbed on June 15, 1979. He said the young man (later identified as Robinson) put a black pouch on the counter near the cash register, unzipped the pouch, and asked for all the money in the cash register. Mr. Gordon stated that he "didn't give him (Robinson) the money until what appeared to be a gun was out of the pouch." The witness further testified as follows:
"Q. Mr. Gordon, as you look at the man seated here, Ray Robinson, today, can you tell this jury whether this is the man that robbed you that day?
A. Yes, I can.
Q. And, what will you tell a jury?
A. I would say that positively that he is on the guy that robbed me.
Q. Did you think he had a gun?
A. Yes, I thought he did have a gun.
Q. Did you want to give him the money?
A. (No response)
Q. Did you want to give him the money? I know it sounds silly, but, did you want to give him the money?
A. Well, it appeared he had a gun, so, I felt that in that particular situation that was the best thing to do, you know.
Q. Were you scared?
A. Not really, you know, I was calm.
Q. Well, why did you give him the money?
A. Well, because of the gun. You see, before I give him the money, I sort of challenge him to, you know, show some proof that he had a gun.
Q. And, that's when he unzipped it, huh?
A. That's when he unzipped the case.
Q. That man right there? (Pointing out the defendant)
A. Right, uh huh. (Affirmative reply)
Q. You're positive?
A. I'm positive."
Under all of the circumstances of this case we conclude that a rational trier of *914 fact, presented with the evidence that was introduced on count two in the instant case, when viewed in the light most favorable to the prosecution, could have concluded that Robinson did in fact have a pistol in the black pouch (as opposed to a toy pistol or some other noninherently dangerous instrumentality) which was used to rob the pharmacist at Walgreen's on June 15, 1979, and that all elements of the offense of armed robbery have been proved beyond a reasonable doubt. As pointed out in Gould, it is not necessary that the robber actually display his weapon to the victim, if the robber is in fact armed with an inherently dangerous weapon, in order for the defendant to be shown to be guilty of armed robbery.
This assignment does not show reversible error.

DECREE
For the reasons assigned, the conviction and sentence of Ray Robinson, the defendant, are affirmed.
AFFIRMED.
LEMMON, J., dissents and will assign reasons.
NOTES
[*] Judges Covington, Cole and Watkins of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon, and Associate Justices Marcus, Blanche and Lemmon.
[1] Although the appellant (defendant) assigned 24 errors, he only briefed Nos. 1, 3, 4, 7, 8, 13 and 24 (with the argument on Nos. 4, 7 and 8 combined). Pursuant to Rule VII, Section 6, assignments of error not briefed may be considered abandoned. See State v. Yates, 350 So.2d 1169, 1173 (La.1977).
[2] The victims, Dubroc and Gordon, also made positive in-court identifications, as did other witnesses.
[3] "The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case."