448 So.2d 1355 (1984)
STATE of Louisiana, Appellee,
v.
Larry WILKERSON, Appellant.
No. 15854-KA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
Writ Denied May 11, 1984.
*1356 Gamm, Greenberg & Kaplan by Alex Rubenstein, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouche, Dist. Atty., Dale G. Cox and *1357 Catherine Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before PRICE, HALL and NORRIS, JJ.
NORRIS, Judge.
Defendant, Larry Wilkerson, appeals a jury conviction of second degree murder in violation of La.R.S. 14:30.1 assigning four errors:
(1) That the State did not prove beyond a reasonable doubt each and every element of the crime of second degree murder;
(2) The trial court erred in denying a motion for a mistrial because defendant appeared in court in jail garb;
(3) The trial court erred in permitting Doris Richardson to testify although she violated the rule of sequestration and was mentally incompetent to testify; [and]
(4) The court erred in not allowing defendant to file a motion to suppress the alleged murder weapon after discovering where it was found.
Finding no merit to these assignments, we affirm for the reasons hereinafter stated.

CONTEXT FACTS
During the early morning hours of August 2, 1982, James Batts left home in his Cadillac ostensibly to purchase cigarettes. At the Silver Dollar Grocery Store, he met Renee Evans and asked her where he could purchase beer. Although she could not provide him with the information sought, she nevertheless accompanied him in his car to Harlem House, a restaurant, where Batts approached Robert Boyd, Larry Wilkerson and Karen Sheppard, none of whom he had ever met before, and made another inquiry regarding the possibility of purchasing some beer. Thereafter, the trio joined Batts and Ms. Evans in Batts' car and went to a house on Murphy Street where a six pack of beer was purchased. The group then returned to Harlem House where they drank the beer. Subsequently, they returned to the house on Murphy Street, purchased two more six packs of beer and went to defendant's residence on West 65th Street in Shreveport, Louisiana.
After arriving at defendant's residence, defendant, Boyd and Ms. Sheppard went into the house where defendant's brother, Terrell Wilkerson, and Doris Richardson were. Batts and Ms. Evans remained in Batts' vehicle. For some period of time, the trio remained in the house. At some point Batts decided to leave and the group inside the house was so informed. Defendant, Boyd, and Sheppard left the house and joined Batts and Ms. Evans in the car. As Batts began backing the car from defendant's driveway, Boyd stabbed Batts in the chest with a knife after which he began choking him. During the stabbing incident, the knife slipped in some manner cutting Boyd's hand. Ms. Sheppard managed to stop the vehicle.
Defendant and Boyd then removed Batts from the car laying him on the ground beside the car on his back. During this series of events, Batts' wallet was removed from his pants pocket. Boyd and defendant obtained an eleven pound brick and began striking Batts in the face repeatedly. At the command of Boyd, Ms. Evans and Ms. Sheppard also struck Batts with the brick. Defendant and Boyd then opened the trunk of Batts' vehicle and removed its contents. The locking device of the glove compartment was also removed. The vehicle was then cleaned by Ms. Evans, Ms. Sheppard and Terrell Wilkerson after which Batts' body was placed in the trunk. Ms. Sheppard then drove defendant, Boyd, Ms. Evans and Batts' body to a park in the Allendale area of Shreveport where defendant and Boyd dumped the body. Batts' vehicle was abandoned in the parking lot of the Kings Manor Apartments and the keys to the vehicle were thrown by Ms. Sheppard into a nearby ditch. The group then returned on foot to defendant's residence.
At approximately 8:00 a.m. on that same morning, Batts' body was discovered by a motorist who called the police to the scene. Efforts were made by the police to identify the victim and Batts' wife was ultimately contacted. Thereafter, Batts' vehicle was *1358 located, impounded and tested. Human blood of the same type as that of Batts was found in the trunk and a latent fingerprint identified as belonging to Boyd was found on a window. On the basis of information received through the Crime Stoppers Program, the defendant and the other participants were identified. An arrest warrant for defendant, as well as a search warrant for his residence, was obtained. The search produced one leather wallet, some clothing bearing traces of human blood, the brick bearing traces of hair and human blood, and the locking device from Batts' glove compartment, and a blank check for the account of "Earlean or James Batts". Items taken from the trunk of the Batts' vehicle, including a hubcap, spare tire, lug wrench, jack and jumper cables, were later recovered from Anthony McMillan, a friend of the defendant, who had received these items in return for his having driven defendant and the other participants to a location on Cooper Road on the day following the killing.
An autopsy performed on the body of Batts revealed that the cause of death was comminuted fractures of the face bones caused by heavy, blunt trauma which caused Batts' air passages and lungs to be filled with blood and resulted in anoxia. In other words, Batts drowned in his own blood because the fracture rendered him unable to swallow, cough or clear his throat to empty his air passages. The stab wound was determined to be superficial; and at the time of death, Batts' blood alcohol level was .36 grams per cent.
Defendant, Boyd, Ms. Evans and Ms. Sheppard were charged with first degree murder. Boyd committed suicide in his jail cell shortly after his arrest. Ms. Evans and Ms. Sheppard were allowed to plead guilty to manslaughter in exchange for their truthful testimony against defendant. Defendant was tried for second degree murder and convicted.

ASSIGNMENT OF ERROR NO. 1
In connection with this assignment of error, defendant contends that the state failed to prove every element of the crime of second degree murder as required by La.R.S. 15:271.[1] The crux of defendant's argument is that the testimony of the co-participants in the crime and that of two other witnesses, one of whom is alleged to have been incompetent to testify,[2] was not sufficient to convict the defendant of the crime because of a lack of direct physical evidence to connect the defendant with the crime itself.
While defendant concedes that a conviction can be sustained on the uncorroborated testimony of a purported accomplice, it is contended that such testimony should be treated with great caution. State v. May, 339 So.2d 764 (La.1976). It is urged that the inconsistencies contained within the testimony of the witnesses make their testimony highly suspect and insufficient to carry the required burden of proof.
In the case before us, in effect, defendant asks that we evaluate the credibility of the witnesses and overturn the trier of fact on its factual determination of guilt; this is not the function of this court on appeal. See State v. Richardson, 425 So.2d 1228 (La.1983); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). In Louisiana, the weight to be accorded to the testimony of an accomplice, as well as other impartial witnesses, is determined by the jury which is the sole arbiter of the credibility of witnesses. See Justice Lemmon's concurrence in State v. Schaffner, 398 So.2d 1032 (La.1981). Because it is the role of the fact finder to weigh the respective credibilities of the witnesses, an appellate court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson *1359 v. Virginia[3] standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Williams, supra.
The defendant was tried for second degree murder. La.R.S. 14:30.1 provides:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simply robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
In connection with its case, the state presented the testimony of Ms. Evans, Ms. Sheppard, and Doris Richardson, all of whom were eyewitnesses to the crime itself. While their testimony is somewhat conflicting in some areas, in the main, it is consistent with the fact that defendant participated in the beating of the victim with the brick which resulted in his death and the robbery committed in connection therewith. The testimony of these witnesses is substantially corroborated by the physical evidence obtained through investigation as to how the murder was committed and the body disposed of. Additionally, another witness testified that defendant had told the witness that defendant, along with Boyd, had killed a man. Accordingly, we conclude that the testimony of the accomplices was corroborated by the physical evidence and other testimony which confirmed material points in their narration as well as the defendant's identity and relationship to the crime. Compare State v. Schaffner, supra.
Evidence is sufficient to support a conviction when any rational trier of fact, in viewing the evidence in the light most favorable to the prosecution, could have concluded that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, supra. Applying this sufficiency evaluation to the evidence in the instant case, we conclude that any rational trier of fact could have found the essential elements of the crime of second degree murder proved beyond a reasonable doubt.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In connection with this assignment, defendant argues that it was error for the trial court to refuse to grant a mistrial after defendant was allowed to appear in court in prison attire. During the first day of voir dire, the defendant appeared in court in jail issued pants with "CDC" stenciled thereon. However, no objection was made to this clothing until the second day of trial when defense counsel requested a mistrial on the basis of prejudicial conduct. The trial judge denied the motion noting for the record that he had not noticed anything distinctive about the clothing that caused him to recognize it as prison attire. The trial court volunteered to give and in fact did give an admonition to the jury, even though it concluded that any objection to the attire had been waived because it was not timely urged and that the incident had not been prejudicial to defendant. The state responded that no one had commented on defendant's attire and that the defendant had not asked for other clothing prior to trial. Defendant did not dispute this statement. At the time that the objection was raised, defendant was attired in civilian clothing.
In State v. Yates, 350 So.2d 1169 (La. 1977), in a trial for attempted aggravated rape, voir dire examination of the prospective jurors began at 11 a.m. and continued *1360 until noon. Court was recessed until 2 p.m. When court reconvened but before the jury returned, defense counsel moved for a mistrial contending that defendant wore prison clothes during the voir dire examination and that these clothes were visible to the jury thereby urging that defendant's appearance in court was a violation of due process which destroyed the presumption of innocence. The state responded that during the morning voir dire examination no objection had been made, no recess requested to change into civilian garb and that defendant had subsequently changed into civilian clothes precluding any subsequent complaint. The court held that the record preponderated that the defendant's clothes were not recognizable by the judge or jury as prison garb and that an accused may insist that he be brought into court with the appearance, dignity, and self respect of a free and innocent man. However, one asserting the deprivation of this right must establish deprivation by clear and convincing evidence, and that the burden had not been discharged in that case.
In State v. Brown, 368 So.2d 961 (La. 1978), it was held that compelled attendance in distinctive prison garb impairs the presumption of innocence on which a defendant relies, citing in support of this holding Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). In Estelle, the defendant made no objection to being tried in prison garb before the jury but attempted to raise the error in post conviction proceedings. In rejecting this attack, the Estelle court noted that there was no finding that defendants were compelled to stand trial in prison garb if a timely objection was made in that particular trial court. Under those circumstances, the court held that failure to make an objection to the court to being tried in such clothes, for whatever reason, was sufficient to negate the presence of a compulsion necessary to establish a constitutional violation. That rationale is equally applicable here.
In the instant case, there has been no showing made by defendant that he was compelled to attend any court proceedings in distinctive prison garb. Accordingly, the trial court correctly refused to grant a mistrial. Compare State v. Brown, supra; State v. Yates, supra; State v. Thomas, 325 So.2d 593 (La.1976); State v. Kinchen, 290 So.2d 860 (La.1974).[4]
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In connection with this assignment, defendant makes a two fold argument that it was improper to allow state witness, Doris Richardson, one of the eyewitnesses to the killing, to testify over the defense objections to her (1) competency as a witness *1361 and (2) her having breached the rule of sequestration.
At the beginning of this trial, the witnesses were placed under the rule of sequestration provided for by La.C.Cr.P. Art. 764. However, when Doris Richardson was called to testify on behalf of the state, it was discovered that she had been in the courtroom for at least an hour. The record is not clear as to whether or not Ms. Richardson was present when the witnesses were placed under the rule. However, the court found the violation was not willful on the part of the witness or the state.
The purpose of sequestration of witnesses is to prevent their testimony from being affected by the testimony of prior witnesses and to strengthen the role of cross-examination in developing facts. State v. Benitez, 381 So.2d 815 (La.1980). However, not every violation of a sequestration order compels exclusion of the witness' testimony because the decision to disqualify a witness is within the sound discretion of the trial judge. La.C.Cr.P. Art. 764; State v. Lewis, 367 So.2d 1155 (La. 1979). On review, the court will look to the facts of the individual case to determine whether the violation resulted in prejudice to the defendant and will inquire whether the exposure was sufficient to affect the witness' testimony or to undermine the opposing party's ability to cross-examine. State v. Lewis, supra.
Our review of the record leads us to conclude that no reversible error was committed by the trial court in its ruling.
This witness was the first of the state's eyewitnesses to testify and the details of her testimony could not have been ascertained from the testimony of the state's previous witnesses because none of them testified about the events surrounding the actual killing. Accordingly, there has been no showing made that the defendant was prejudiced nor that the defense's ability to cross examine this witness was impaired in any manner. The trial court specifically found that there was nothing that the witness could have heard from the prior witnesses which would have made a difference in her testimony. On the showing made, we are unable to conclude that such a determination was an abuse of discretion.
The defendant also argues that the trial court committed error when it declared this witness to be mentally competent to testify contending that La.R.S. 15:461 and 469 respectively both require that a competent witness be a person of proper understanding. La.R.S. 15:469 provides the test for competency of a witness under twelve years of age. State v. McDowell, 427 So.2d 1346 (La.App. 2d Cir.1983). Understanding is the test for any other witness under La.R.S. 15:461. Whether a person is competent to testify in a criminal proceeding is a determination that is relegated by the statutes to the judge and not to the jury. State v. McDowell, supra.
The trial court conducted a hearing outside the presence of the jury to ascertain the extent of this witness' understanding and to preview her testimony. This witness, a nineteen year old of obviously limited intelligence, although sometimes evasive and sometimes confused, identified the defendant and his accomplices and testified with a reasonable degree of clarity regarding the events surrounding the killing. To a substantial degree, her testimony was corroborated by that of the other two eyewitnesses and the physical evidence. After hearing a preview of her testimony, the court found her competent to testify.
A trial court's assessment of a witness' response and his or her overall demeanor is entitled to great weight and will not be disturbed absent a showing of an abuse of discretion. State v. Humphrey, 412 So.2d 507 (La.1981). We are unable to conclude that the trial court abused its discretion in ruling that this witness was competent to testify.
Certainly, this witness' defects of capacity, sensory or mental, which would have lessened her ability to perceive the facts which she purports to have observed were provable to attack the credibility of *1362 the witness, either upon cross-examination or producing other witnesses to prove the defect. However, such matters go to her credibility, not to her competency, which was properly determined by the trial court. See State v. Luckett, 327 So.2d 365 (La. 1976).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
In connection with this final assignment, the defendant contends that the trial court's denial of his request to file a motion to suppress the murder weapon during trial was erroneous.
Toward the end of this multiple day trial and after the brick had been introduced into evidence, pictures of it had been introduced into evidence, and numerous witnesses had identified, discussed and described itall without objection on the part of the defendantthe state, through the testimony of Detective Stevens, sought to introduce into evidence the search warrant. Shortly thereafter, outside the presence of the jury, defense counsel stated that he had just discovered that the brick previously introduced into evidence had not been found on defendant's property but rather in an adjacent vacant lot, and sought leave of court to file a motion to suppress it alleging that the motion was not untimely because defendant was surprised by the information. The state objected.
The trial court denied defendant the right to file the motion stating that the brick had already been admitted into evidence without objection and the jury had heard extensive testimony about it and that if the brick had in fact not been found on defendant's property then he had no right to complain.
La.C.Cr.P. Art. 521 provides:
Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
La.C.Cr.P. Art. 703 provides in pertinent part:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
* * * * * *
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
The purpose of these articles is to prevent interruption of trials, avoid the effort and expense of useless trials, and to protect juries from exposure to inadmissible evidence. State v. Kimbrough, 432 So.2d 833 (La.1983); State v. Taylor, 363 So.2d 699, 702 (La.1978).
First, it is obvious that the defense was or should have been aware of the grounds for the motion prior to trial. The defendant was arrested on August 6, 1982. Counsel was appointed on his behalf on August 13, 1982. Thereafter, the defense filed a motion for discovery on October 25, 1982, which was answered on November 2, 1982 and supplemented several times thereafter. Attached to the state's answer of November 2, 1982 was a diagram showing the exact location of the brick. Furthermore, in the state's supplementary answer filed November 8, 1982, a certified copy of the crime lab report was provided which contained a statement that the listed brick was "found in field on east side of 645 W. 65th Street". Additionally, the search warrant and its return were filed into evidence at a hearing on a motion to suppress on December *1363 14, 1982 and the return clearly states where the brick was found. Trial was not begun in this matter until April 25, 1983. During the trial, pictures of the brick and its location were introduced into evidence, as was the brick and testimony concerning it. Nevertheless, on April 27, 1982, the defense expressed "surprise" at the location of the brick as described in the detective's testimony.
At this point, even if the evidence had been inadmissible [which we do not hold that it was][5] to say the least, the damage had been done. Compare State v. Taylor, supra. Clearly, defendant's failure to file his motion to suppress prior to trial was inexcusable; and under the circumstances presented here, we can not conclude that the trial judge abused his discretion in not allowing defendant to file his motion to suppress at the time it was urged. State v. Kimbrough, supra.
This assignment of error is without merit.
For the reasons assigned, the conviction and sentence of defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] La.R.S. 15:271 provides:

The plea of not guilty throws upon the state the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute the defendant's guilt.
[2] This contention will be dealt with extensively in connection with Assignment of Error No. 3.
[3] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[4] These cases were succinctly summarized in State v. Brown, supra, as follows:

In Yates, we noted that the garb was not distinctively that of a prison (since the normal jail uniform was orange (as here), while the accused was wearing blue denims), that (unlike the present instance) no objection had been made before the prisoner's appearance in prison garb during voir dire examination and no request had been made to change into civilian clothes, and that during the noon recess the accused was permitted to change into civilian clothes, with no objection or request for a mistrial made until after the prejudice was cured.
In State v. Kinchen, 290 So.2d 860 (La. 1974), the accused and another prisoner were seated briefly (for ten minutes) in the courtroom while preliminary matters were being considered before the trial. As soon as the trial judge became aware, he immediately ordered the accused to be returned to the jail to be dressed in civilian clothes. Because some of the jury venire may have been seated in the courtroom the accused's counsel moved to excuse the entire jury venire. We found no reversible error in the denial, noting certain factors such as the absence of any showing that the jurors had recognized the individual charged to be the prisoner who had sat for ten minutes in the jury box, the defendant being dressed in his own clothes for the trial later in the morning.
See also State v. Thomas, 325 So.2d 593 (La.1976), where similarly no objection was made or prejudice shown by the accused's initial appearance in non-distinctive prison garb, and where he appeared in civilian clothes for the bulk of the trial.
[5] In fact our review of the record leads us to conclude that if, in fact, the brick was not properly seized pursuant to the warrant, no warrant was required for the seizure because it falls within the "plain view doctrine" which is an exception to the warrant requirement. See State v. Westfall, 446 So.2d 1292 (La.App. 2d Cir.1984) and the cases cited therein.