JiSEXTON, Judge.
This criminal appeal arises from the First Judicial District Court. The defendant, Marion T. Hullaby, was charged by bill of information with armed robbery, LSA-R.S. 14:64, and second degree kidnapping, LSA-R.S. 14:44.1. He was convicted as charged by a jury. The trial court imposed concurrent sentences of 40 years at hard labor without benefit of parole, probation or suspension of sentence on each count. The defendant appeals, urging two assignments of error. We affirm.
On October 24, 1990, the defendant, Marion T. Hullaby, (known by his peers as “Weedy Bug”) and four other individuals (Terry Vinson, Corey Gainey, Lawrence Johnson and Alonzo Pouncy) were riding around in Pouncy’s car in Shreveport looking for someone to rob. Shortly after 11:30 p.m., they spotted their victim, Willie Moore, who was sitting in a 1979 blue Chevrolet Camaro parked on the street in front of Schumpert Hospital waiting to pick up his cousin, Lula Shine, from her job at Schumpert. Hullaby and his cohorts parked Pouncy’s vehicle a short distance away from the Camaro.
Hullaby, armed with a .38 caliber handgun, and Gainey, armed with a .25 caliber handgun, approached the victim. Hullaby forced Moore to get out of the driver’s side of the car, walked him around the vehicle, and pushed him into the front passenger seat. An eyewitness parked across the street who happened to glance over at Moore just as he was being forced into the vehicle testified that Moore looked for an instant as if he was going to run away. It was only after the vehicle sped off immediately thereafter, however, that he realized that Moore had been kidnapped. He then located Ms. Shine and informed her of what he had seen. She immediately notified the police.
Hullaby sat in the back seat behind Moore while Gainey drove the victim’s car. The other three individuals followed in Pouncy’s car. The two cars met up with each other on Gary Street. They parked Pouncy’s ear, and Moore was ordered to get into the trunk of his own ear. The spare tire was removed to make room for the victim. As Moore was getting in the trunk, his high school ring was removed by Hullaby, and RHullaby then closed the trunk on thé victim. All five of the men then got into Moore’s car and drove off with Moore in the trunk of the vehicle.
Shortly thereafter, at 12:30 a.m., the stolen car was spotted by police on Milam Street and stopped. Four of the five individuals, including the defendant, fled the scene, but were later apprehended and arrested. Police found a recently fired .38 caliber handgun with two spent rounds and a .25 caliber handgun in the vehicle. Willie Moore was not in the vehicle.
The next morning, the body of Willie Moore was found under the Portland Street bridge with two .38 caliber gunshot wounds *1096 to the head. The state concedes Hullaby did not shoot the victim. Hullaby was charged with armed robbery (the ring) and second degree kidnapping.
A jury convicted Hullaby as charged, and the court sentenced him to 40 years at hard labor for each offense without benefit. The sentences were assessed to run concurrently. Defendant now asserts two assignments of error:
1. The trial court erred in forcing the defendant to appear before the jury in clothes other than his own (an unadorned deputy sheriff uniform).
2. The trial court imposed an excessive sentence.
We will consider the assignments of error in the order presented.
On the final day of trial, the sheriffs office failed to bring the defendant’s clothing from the parish prison. Rather than have the defendant appear in his orange jail uniform, the court provided him with a white shirt and brown pants, which was actually an unadorned deputy sheriffs uniform. The clothing was properly sized. The defendant was required to appear before the jury in this attire only during the closing arguments and the jury instructions. Counsel for the defendant vigorously objected. However, the court found that the defendant was not prejudiced by his appearance in the clothes provided and trial proceeded.
A defendant may insist he appear before jurors with the appearance, dignity, and self-respect of a free and innocent man, presumed innocent until determined otherwise “solely on the basis of the evidence introduced at trial and not on grounds of 13official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.” Holbrook v. Flynn, 475 U.S. 560, 567, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986).
The trial court should seek to prevent the defendant from being viewed or attired in any manner which is destructive of the presumption of innocence and impartiality of judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Otis, 586 So.2d 595 (La.App. 2d Cir.1991), writ granted in part on other grounds, 589 So.2d 487 (La.1991), appeal after remand, 592 So.2d 1 (La.App. 2d Cir.1991). Our courts have held that compelling a criminal defendant to stand trial dressed in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. LSA-Const. Art. I, § 16; State v. Brown, 585 So.2d 1211 (La.1991) (emphasis added); State v. Spellman, 562 So.2d 455 (La.1990). Such a practice is “inherently prejudicial ..threatens the “fairness of the factfinding process .. and serves “no essential state policy....” State v. Brown, supra at 1213.
The case before us, however, presents a different factual circumstance from the cases involving trial of a criminal defendant in readily identifiable prison attire. The substituted clothing in this case was free of prison markings or numbers and, in fact, was not prison attire at all. It consisted simply of brown pants and a white shirt.
Nevertheless, the “prison attire” cases are instructive. Under that jurisprudence, the appropriate analysis is to determine whether the challenged clothing was inherently prejudicial. The attire was inherently prejudicial if it posed an unacceptable risk of prejudice to the defendant’s right to a fair trial. If the substitute clothing was not inherently prejudicial, then the inquiry is whether the defendant showed actual prejudice as a result of being compelled to wear the challenged clothing. See Holbrook v. Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) and State v. Thom, 615 So.2d 355 (La.App. 5th Cir.1993).
|/The case at bar is somewhat similar to the cases of State v. Nicolaus, 340 So.2d 296 (La.1976) and State v. Yates, 350 So.2d 1169 (La.1977), where our supreme court held that denim pants and shirts were not identifiable as prison clothing and that trying defendant in such attire over his objection did not constitute reversible error. See also, State v. Thomas, 325 So.2d 593 (La.1976). Similar to the denim pants and shirts in Nicolaus and Yates, an unadorned deputy sheriffs uniform is not readily identifiable prison attire and, therefore, is not inherently prejudicial.
*1097 Nor has the defendant clearly established that any actual prejudice flowed from the trial court’s act of compelling him to appear before the jury in the brown pants and white shirt. This assignment of error lacks merit.
Hullaby was sentenced to concurrent sentences of 40 years at hard labor without benefit of parole, probation or suspension of sentence on each count. The state filed a pre-sentence motion for upward departure from the guidelines recommendation. In rendering sentence, the court noted that the sentencing guidelines called for a sentence of 330 to 360 months. The court stated that it would make an upward departure from the guidelines due the aggravating circumstances that made this case atypical. This included the particularly cruel and callous way the victim was treated (locked in the trunk and driven around town) and the permanent injury and economic loss resulting from his subsequent murder.
The defendant filed a motion to reconsider asseHing the sole grounds of constitutional excessiveness. The motion to reconsider was denied after a contradictory hearing on September 30, 1993.
On appeal, the defendant argues the trial court did not adequately consider the mitigating circumstances of the youthful age of the defendant (19 years) and the substantial possibility of his rehabilitation. Although the subject of a limited argument in the defendant’s appellate brief, the issue of the trial court’s compliance with the departure procedures of the guidelines was not raised in the motion to reconsider and is therefore not properly before this court. We therefore consider whether the sentence Rimposed is constitutionally excessive. LSA-C.Cr.P. Art. 881.1; State v. Mims, 619 So.2d 1059 (La.1993).
Whether the term of imprisonment is too severe depends upon the circumstances of the case and the background of the defendant. State v. Coleman, 605 So.2d 231 (La.App. 2d Cir.1992). The statutory range for armed robbery is a minimum of 5 and a maximum of 99 years at hard labor. LSA-R.S. 14:64 B. The wide range indicates a legislative intent to grant the sentencing court discretion in gradating sentences to fit the unique circumstances of offender and offense. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Curry, 593 So.2d 860 (La.App. 2d Cir.1992). Even under the new sentencing guidelines, the trial court retains a significant amount of discretion in the sentencing of a defendant. Additionally, the guidelines do not mandate the amount of weight to be given various sentencing factors. State v. Smith, 629 So.2d 333 (La.1993).
The defendant argues the sentence is excessive in light of his youth and the substantial possibility of rehabilitation. The criminal history of the defendant demonstrates that prior attempts of juvenile rehabilitation have been unsuccessful. The defendant has an extensive and increasingly serious history of criminal behavior beginning with his first felony adjudication at the age of 11. His criminal conduct has become more violent with each successive offense, including juvenile adjudications for aggravated battery and simple robbery. Continued involvement in criminal activity and his escapee status from L.T.I. at the time of these offenses weigh against any claim of potential for rehabilitation.
In the present case, the punishment imposed is adequately supported by the record and is not constitutionally excessive. The sentence imposed is less than one-half the statutory maximum for the offense. The sentence does not amount to a needless infliction of pain and suffering and does not shock the sense of justice, in light of the particularly cruel and callous behavior of the defendant and his cohorts resulting in the execution-style murder of an innocent man. See and compare State v. Penny, 486 So.2d 879 (La.App. 1st Cir.1986), writ denied, 489 So.2d 245 (La.1986) (99-year sentence for armed robbery was not excessive for a 19-year-old defendant with a juvenile criminal history whose confession established that he was, in fact, a principal to first degree murder); and State v. Morrison, 542 So.2d 582 (La.App. 1st Cir.1989) (75-year sentence for armed robbery was not excessive for defendant who drove the car to and from the scene but did not actively participate in the murder of the victim); and State v. Augustine, 555 *1098 So.2d 1331 (La.1990) (40-year sentence for armed robbery was not excessive for 18-year-old first felony offender).
Accordingly, we hold that the sentences imposed by the trial court were not excessive. This assignment of error lacks merit.
The convictions and sentences of the defendant are affirmed.
AFFIRMED.