GARRETT, J,
JjThe defendant, Jacques Patrick Williams, appeals, seeking to vacate his conviction and sentence for attempted second degree murder. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
Williams was involved in a relationship with the victim, Angela Woods.[1] He lived in an apartment with Woods and two of her daughters, 15-year-old Tamiya Wallace and 23-year-old Alexandra Woods. Woods frequently kept a four — or—five-year-old child she called her “godchild.” The relationship deteriorated, and Woods asked Williams to move out by September 21, 2012: He failed to do so. On the evening of September 21/2012, Woods accompanied her uncle, Johnny Bryant, to the-Blues Palace in Grambling, Louisiana. They met several friends there, including Dexter Thomas. Woods had been introduced to him, but did not know him well.
At some point, Williams arrived. at the club. He sat at the table with Woods and her friends, but Woods refused to go home with Williams. When the club closed at 2:00 a.m. on September 22, 2012, Woods left with her uncle, who eventually took her home.
When Woods got home, she lay down on the sofa, which she had used for a bed for *739 some time. She woke up at 5:30 a.m. when the alarm on her phone.-went. off. She had set the alarm, intending to arise at that time. However, she went back to sleep and awoke again at 6:00 a.m. Her phone was gone. Williams came into the living room and asked her who had been l2texting her at 2:00 a.m. Apparently, Thomas sent Woods a text message saying “good night.” Woods was unaware of the message.
An argument ensued, and Williams struck Woods in the face twice. The argument awoke Tamiya and Alexandra, who came out of their bedrooms. Tamiya stood between Williams and her mother. Alexandra gave her mother the keys to a car and told her to leave. Woods ran to the vehicle, but the gear shift was broken and she could not get the car in reverse.
According to Woods, she kept a knife under her mattress for protection. Williams obtained the knife and came outside. He broke out the driver’s side window of the car and attempted to shut off the ear engine. When he was unable to do so, he began stabbing Woods. She said, “Jacques, you’re gonna kill me.” Williams responded, “I know.” Tamiya jumped on the defendant to stop the attack and Alexandra awakened the next door neighbor. After stabbing Woods 23 times/ Williams stopped and went back into the apartment. Alexandra got into the car with her'mother and drove her to the hospital. Tamiya stayed at the apartment to take care of the victim’s godchild.
Hpon arrival in the emergency room, Woods was given a blood transfusion and underwent surgery that day to close her wounds. Dr. Greene S. Butler, Jr., who performed the surgery, stated that- Woods had 23 stab wounds to her head, neck, chest, arms, and hands. Her left lung was collapsed, and one of her thumbs was- almost severed. One stab wound went through the abdomen wall,- and the doctor could palpate- the liver through Rthe opening.- Woods had a neck wound that narrowly missed the esophagus and the carotid artery. Dr. Butler stated that Woods required 108 centimeters, or approximately three feet, of sutures. Several days after the initial surgery, Woods had surgery to -repair a torn tendon in her arm. She later had a third surgery in Houston, Texas, to repair nerves in her arm.
Williams was apprehended in the apartment. Shortly after the attack, he called 911 to . turn himself in. He had minor lacerations on his chest and arm. He claimed that when he argued with Woods, she grabbed the knife and cut him. Following a struggle over the knife, he said, she went outside. ,He acknowledged that he Mowed Woods to the. vehicle and broke out the car window. He admitted that, at that point, he “cut her back.” Woods and her daughters denied that Woods had the knife or struck Williams in any way.
A knife sheath was found in the parking lot. Williams told police he threw the knife away. The weapon was located under a tree or small shrub 30 to 40 feet from the apartment. The knife was 28 centimeters long.
Williams was charged with committing attempted second degree murder of Woods. A sanity commission was later appointed to evaluate him. The psychiatrists who examined Williams concluded that he was not suffering from any mental disease at the time of the offense and that he was competent to stand trial.
Williams was tried before a jury on. March 10 through 12, 2014. On the first day of trial, before jury selection began, the trial court noted on the record that the defendant was present in court “in street clothing with no | ¿indicia of incarceration.” *740 Williams remained in court the entire day during jury selection,, which was completed that day. On the. second day of trial, before the jury was brought into the courtroom, the court noted on the record it had been informed that. Williams cut himself prior -to coming to the court from the jail and refused to wear his street clothes. The court made the following statement:
... The bailiffs have indicated to me ... that the defendant had been causing problems this morning. One, he refused to get into his street clothes... And he’s also been uncooperative and he’s not communicating and the like. I have explained to Mr. Williams off the record, I’m going to explain to him now. We would like for him to join us at this trial as far as being here in the courtroom. We would like for him to be in his street clothes as he was yesterday and we’d like to be able to proceed under that juncture; however, we’re not going to allow him to attempt to subvert the means of justice just because he wants to try to manipulate the system. I have .looked at the Minutes. I have reviewed the Minutes as provided by the Clerk of .Court.- I .don’t think there’s any question that this defendant’s • ready to proceed. It’s been a long time coming. It may be that he feels that he is an innocent man and that he fears that justice will not be done. On the other hand it may just be that he realizes his day of reckoning, at long last has come and that .justice is about to be propounded ... you’ve got the right to a fair trial and we’re going to do that but you also have, I think, an impetus to assist us in being able to provide you with a fair’trial. I’m going to step down off the bench in just a moment and have a recess. You talk with your lawyer, decide whether you wanna be here and whether you wanna be in your street clothes or whether you wanna be in the back. I’m going to provide a speaker back there and you can listen in a separate room by yourself with — with your guard to what’s going on in the courtroom- or you can be here in the courtroom with us but that’s going to be- your decision. All right, [defense counsel], do you have anything you need to add?
Defense counsel told the court it was his understanding that Williams had attempted to commit suicide. The following exchange occurred between the court and defense counsel:
| ¿The Court: Well the word I get is that he scratched himself. He fell way short of attempting suicide. I think — I think his mood’s very explainable,- quite frankly. He’s looking at spending the rest of his — essentially looking at the possibility of spending the rest of his life in prison .at hard labor. I. can understand you’d be in- a sour mood, facing that prospect.
[Defense Counsel]: Well, Your Honor, I’m looking at his uniform. He’s got blood down both legs so I think it'was more than a scratch.
The Court: Well but the report was he did not — He had a razor that essentially prevented him. from being able to do anything and- they are superficial wounds. Í mean he may have caused some blood but that’s — I mean a lot of things will make you bleed a lot but apparently there’s no — he’s—he’s not had to be rushed to the Emergency Room. There’s no life threatening injury or anything like that.
Defense counsel expressed concern over the defendant’s state of mind and ability to assist in -his defense. He asked that the defendant’s state of mind be evaluated by a professional. The court noted the proceedings had been going on for years and stated:
*741 I’ve observed the defendant. I’m observing the defendant right now. He’s ready to proceed. He understands exactly what he’s doing. He’s been yery calculating with it. We’ll be at recess and I’ll come back in about ten minutes. You just talk to the defendant in the' meantime and decide how he wants to— how he wants to continue on this.
After defense counsel consulted ’with Williams, the court reconvened Outside the presence of the jury and questioned the jailer who was present when Williams was preparing to go to court. According to the officer’s report, when it was time for Williams to put on his street clothes for court, he showed the officer several superficial cuts on his arms below the elbows. Williams was evaluated by the nurse who verified that' the wounds were | (¡superficial and did not require that Williams be taken to the emergency room. Williams expressed his desire to wear his prison uniform to court.
The court noted that the sanity commission experts determined that Williams was able to make simple decisions and that his mental condition was not likely to deteriorate significantly' under the stress of trial. The-court stated:
Again, I encourage, I implore, I beg the defendant for his own benefit and his own defense to cooperate in putting his street clothes on and being able to join us and be with us in the courtroom this morning and throughout the rest of this trial without visible restraints but, again, that’s up to the defendant. The defendant’s actions are — are highly coincidén-tal to the events of the last thirty-six hours, i.e., the commencement. of. .trial. They have the coincidental effect, if they were successful, of delaying the trial or prolonging it. And so that is also entered into the Court’s calculation.
The court cited the legal authority it considered and ruled that if Williams chose not to put on his street clothes and appear in court,, he would be kept in a. separate room with a speaker so he could hear the proceedings and the trial would proceed. The court stated:
It is important that we preserve the defendant’s right to a fair and impartial jury and- a fair trial; however, Tdo not think those constitutional rights give the defendant the right to poison this jury pool, the well that wé’re in or to subvert the means of justice for his own ends or his own 'entertainment if that’s what this is for.
Williams chose not to be present. ’ The court noted for the record that it checked the speaker in the room where Williams was sitting and it was working. The court discussed with the prosecution and defense counsel an explanation for the jury regarding the absence of Williams. They agreed to the following explanation:
|7One thing I wanna tell you is the defendant is unable to be with us in the courtroom itself this morning. I have •made a ruling that we would continue the trial in the defendant’s absence. You should draw no inferences from that. There are no presumptions that • run from that either for in favor of the defendant nor against the defendant.
After opening arguments, the court filed into the record the sanity commission reports and also made the additional comment:
... I will note what I did not state on the record previously in my ruling but another thing that went into the Court’s consideration- was that the defendant’s actions from what I was able to see and observe in the courtroom and also hear from the testimony offered by the Detention Center officers and the report that was entered into evidence that the *742 defendant’s wounds were intentional, superficial and not designed to cause intense pain or harm to himself furthering my determination that it was-deliberate acts to subvert the ends of justice and I supplement my prior ruling with that[.]
During every recess, defense counsel was given, additional tinie to consult with Williams. Before adjourning for the noon recess, the .court asked defense counsel to visit with Williams and again “implore him, beg him on my behalf to come back with us, okay?” After the lurich recess, the court noted for the record that Williams had changed into his street clothes, but had decided that he still would not come into the courtroom. Defense counsel confirmed that Williams knew he had an open invitation to return to the courtroom.
After the jury was dismissed following the first day of testimony, Williams was brought into the courtroom where he had the following exchange with the court:
The Court: All right, Mr. Williams is in the courtroom now with his counsel and outside -the hearing and observations, - as I said previously, of the Jury. Mr. Williams, we’re going to start the trial again tomorrow, morning at nine o’clock and, once |sagain, we’d invite you to be here-with the rest óf us. I don’t know that you’re gaining anything by being obstinate and so I’d-like to have you be here in court with us in your civilian clothes. I do see you finally decided to put your .civilian clothes on. I beg you, I ask you, I. exhort ..you, I whatever words I can use to implore you to be here and participate and to help your lawyer present your case for you. Don’t assume it’s hopeless. Work with him and help him present a defense for you, okay? And — and hopefully we’ll see you tomorrow. Is that all right?
The Defendant: Yes, sir. Could I see the doctor though? I’ve been asking to see the doctor. ■
The Court: I’ll ask that the Detention Center make sure you get medical treatment to attend to — to the wounds you inflicted on yourself this morning and see if you have any other medical needs and — and I’ll order that to be done immediately and so that we can have you back here ready to. go tomorrow morning. If there’s any way we can get a long sleeved shirt for him just in case he wants .to participate in the trial, I’d like to do that to help cover up those bandages cause I don’t want them to think anything bad about the bandages.
The next day, Williams appeared in court, dressed in his street clothes. The court noted that his attire was appropriate and covered the bandages. Williams was present for the remainder of his trial.
The jury unanimously convicted Williams, as charged, of attempted second degree murder. On May 27, 2014, Williams appeared for sentencing. The court noted that.Williams was 48 years old at the time, had numerous felony convictions, and had never successfully completed probation. He was sentenced to serve 50 years at hard labor without benefit of parole, probation, or suspension of sentence. On January 13, 2015, Williams appeared in'court with counsel to request an out-of-time appeal, which was granted.
URIGHT OF CONFRONTATION
On appeal, Williams argues that his right of confrontation, under the Sixth Amendment-to the United States Constitution, was violated when he was barred from the courtroom during the first day of trial testimony. This argument is without merit.
*743 Legal Principles
The Confrontation' Clause of the Sixth Amendment to the United States Constitution provides that: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]” Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 3.53 (197Q).[2] The Supreme Court in Illinois v.. Allen, supra, noted that the Fourteenth Amendment makes the guarantees of this clause obligatory upon the states. The Supreme Court also recognized that one of the most basic of the rights guaranteed by the Confrontation Clause is the accused’^ right to be present in the courtroom at every stage of his trial. Illinois v. Allen, supra.
La. C. Cr. P. art. 831 provides, in pertinent part:
A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
11 o(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present,.and in trials without a jury, at all times when evidence is being adduced; and .
(6) At the rendition of the verdict or judgment, unless he voluntarily absents 'himself. * ''
La. C. Cr. P. art. 831 establishes a defendant’s due process right to be present at every stage of the trial when his absence-might frustrate the fairness, of the proceeding. However, the provisions of La. C. Cr. P. art. 831; are not absolute; State v. Landrum, 35,053 (La.App.2d Cir.9/26/01), 796 So.2d 94, writ denied, 2003-0493 (La.2/20/04), 866 So.2d 823.. La. C. Cr. P. art. 832 provides exceptions which include voluntary, absence and disruptive conduct justifying exclusion from the courtroom. That article provides in pertinent part:
A. A defendant initially present fdr the commencement of trial shall not prevent thé further progress of'the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to c'ounsel has been waived and: ' ' .
(1) He voluntarily absents himself after the trial has commenced, whether or not he has. been informed by the court of his obligation to be present during the trial; or
(2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he. persists in conduct which justifies his exclusion from the courtroom.
The United States • and Louisiana Supreme Courts have been unequivocal in their holdings that, while a criminal defendant has the right to be present during his trial, he does not have the right to use that presence as a means of preventing the continuation of his trial. State v. Smith, 43,7531 La.App.2d Cir.12/3/08), 999 So.2d 160. In Illinois v. Allen, supra, the Supreme Court held that •& defendant can lose his right to be present at trial if, after he has been warned by the judge that he *744 will be removed if he continues his disruptive behavior, he nevertheless insists on conducting- himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.
A defendant may also waive his right to be present by voluntarily absenting himself from the trial. La. C. Cr. P. art. 832. In the case of a defendant who voluntarily absents himself from trial, the next inquiry is whether the defendant’s attorney was present at every stage of the proceeding. If so, the defense attorney’s presence .is sufficient to satisfy the due process requirements of La. C. Cr. P. arts. 831 and 832. State v. Bolton, 408 So.2d 250 (La.1981); State v. Landrum, supra,
A defendant may insist he appear before jurors with the appearance, dignity, and self-respect of a free and innocent man, presumed innocent until determined otherwise solely on the basis' of the evidence introduced at trial and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. The trial court should seek to prevent the defendant from being viewed or attired in any manner which is destructive of the presumption of innocence and impartiality of judicial proceedings. Our courts have held that compelling a | ^criminal defendant to stand trial dressed in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. Such a practice is inherently prejudicial, threatens the fairness of the factfinding process, and serves no essential state policy. State v. Hullaby, 26,227 (La.App.2d Cir.8/19/94), 641 So.2d 1094.
Discussion
On appeal, Williams claims that, because he never disrupted the'courtroom in front of the judge or jury, he should have been allowed to remain in the courtroom, even in his prison attire. According ' to Williams, removing him from the courtroom for nondisruptive conduct violated his constitutional right to confrontation. He asserts his conviction and sentence should be vacated and the matter should be remanded for further proceedings. This argument is not persuasive.
Williams was not barred from the courtroom for disruptive behavior. He demanded to appear for trial in bloodstained prison clothes. In order to avoid disruption of the proceedings and to prevent the defendant from being viewed' or attired in any manner which would be destructive of the presumption of innocence or the impartiality of the judicial proceedings, the trial court gave Williams the option of changing into his street clothes or listening to the proceedings over a speaker in a separate room. The trial court recognized that the defendant’s behavior was aimed at delaying the proceedings. Also, later that day, Williams actually put on his street clothes, but still refused to enter the courtroom. Williams was present in |13court during jury selection, voluntarily chose not to be in court on the first day of testimony, and agreed to come into court on the final day of testimony. He was present when the jury returned its verdict. His attorney was present at all stages of the proceedings. The entirety of the defendant’s absence from the courtroom during the trial was due to his voluntary choice. His voluntary absence, after the commencement of trial, waived his right to be present.
*745 La. C. Cr. P. art. 17 provides that a court has the duty to require that criminal proceedings be conducted with dignity and in an orderly and expeditious manner and to control the proceedings so that justice is done. As observed in several other cases dealing with voluntary absences after trial begins, we will not allow a defendant to manipulate and frustrate the .speedy trial and prosecution of criminal cases by absenting himself from a trial which has already commenced whenever he chooses to do so.. State v. Ray, 547 So.2d 1350 (La.App. 3d Cir.1989), writ denied, 553 So.2d 470 (La.1989); State v. Humphrey, 576 So.2d 1104 (La.App. 3d Cir.1991).
In this case, the trial court did not abuse its discretion in giving Williams the choice to appear in court properly clothed, or to listen to the proceedings in another room. ■ The trial court’s - actions were aimed at preventing a disruption of the proceedings. The trial court was also concerned with Williams appearing before the jury in prison attire and destroying the impartiality of the proceedings. The court justifiably determined that Williams was béing manipulative by insisting on appearing in court in prison attire that contained blood from his self-inflicted | ^superficial wounds. Defense counsel was given ample time throughout the dáy to consult with Williams, and the court extended to him an open invitation to return to the courtroom at any time he chose to do so, properly attired.
The trial court did not err in its'exercise of discretion in this matter and the defendant was not deprived his right of confrontation.
CONCLUSION .
For the reasons stated above, we'affirm the conviction and sentence of the defendant, Jacques Patrick Williams, for attempted second degree murder. ■
AFFIRMED.

. The victim’s name is also spelled “Angelia Woods” in the indictment. However, we chose to use the spelling in the trial transcript.

. The same right is contained in La. Const. Art. 1,§ 16.