McCALLUM, J.
Gabriel Jackson was convicted in absentia of aggravated flight from an officer in violation of La. R.S. 14:108.1(C). Jackson was subsequently adjudicated as a third-felony habitual offender and sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence. Jackson appeals his conviction and sentence.
For the reasons that follow, we affirm.
FACTS
When Shreveport police officer Christopher Hodges drove his patrol SUV onto westbound I-20 from the Murphy Street entrance ramp in Shreveport late on the evening of August 4, 2017, he noticed a black car ("car") traveling at a high rate of speed. Hodges accelerated his vehicle to 90 mph in order to catch up to the car before the vehicles reached the upcoming exit for Jewella Avenue. Hodges then activated his SUV's emergency lights.
*1220 Officer Hodges turned his siren on briefly as both vehicles exited at Jewella. When the suspect vehicle did not stop, Officer Hodges turned his siren on again for a brief moment, but the car continued to travel south on Jewella. Hodges turned his siren on again and left it on, but the car continued on Jewella. Hodges saw the car's driver stick his arm out of the window and wave a bit, which Hodges took as a signal that the driver saw him. The vehicles continued a short distance to the intersection of Midway Avenue and Jewella, where the car made a left turn onto Midway through a red light. Midway is a two-lane street with homes on both sides of the street as one moves away from the intersection with Jewella.
As the car proceeded east on Midway, it crossed a double-yellow line in order to pass a vehicle. Hodges, who continued the pursuit with his lights and sirens on, thought the speed limit on Midway was 25 mph and that the suspect's car was pulling away from him. Officer Hodges believed he was traveling at 50 mph at the time.
As the chase continued onto additional residential streets in Shreveport, the car went through several stop signs without coming to a stop. In one instance, the car even went around another vehicle already at a stop sign. Once the car reached Fairy Street, the driver accelerated in an attempt to increase the distance between Hodges' vehicle and his own.
Fairy Street ends in a T-type intersection at Essex Street. The car drove through this intersection, across a ditch, and into a chain-link fence in the yard of an occupied home located on Essex. The driver was unable to exit through his door because the driver's side of the car was against the fence. Officer Hodges ordered the driver to stay seated while Officer Steve Herring, who assisted in the pursuit, detained the passenger. The driver told Officer Hodges that his name was Gabriel Jackson, which was confirmed through his identification. Jackson was arrested for aggravated flight from an officer as well as for multiple traffic violations and taken into custody. Jackson's passenger was released at the scene. The pursuit had lasted approximately four minutes.
On September 7, 2017, Jackson was charged by a bill of information with committing aggravated flight from an officer in violation of La. R.S. 14:108.1(C) by refusing to bring his vehicle to a stop under circumstances wherein human life was endangered.
La. R.S. 14:108.1 defined aggravated flight from an officer as:
C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.
D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts:
(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle or watercraft.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation *1221 of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.
(5) Fails to obey a stop sign or a yield sign.
(6) Fails to obey a traffic control signal device.
Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than five years and may be fined not more than two thousand dollars. La. R.S. 14:108.1(E)(1). Whoever commits the crime of aggravated flight from an officer that results in serious bodily injury shall be imprisoned at hard labor for not more than ten years and may be fined not more than two thousand dollars. La. R.S. 14:108.1(E)(2)(a).
Trial began on April 30, 2018. Jackson, who was released on bond, was present with his attorney as 12 jurors and two alternates were selected, the bill of information was read, and the jury was instructed about the trial process. The proceedings were then adjourned until 9:00 a.m. on the following day.
Jackson was absent when trial commenced at 9:15 on the morning of May 1, 2018. His attorney told the trial judge that he had spoken with Jackson earlier that morning and had actually gone to Jackson's home to bring him to the courthouse. Jackson's car was in the driveway when his attorney arrived at Jackson's home. His attorney then called Jackson to let him know that he was outside. Jackson told his attorney that he was at his aunt's home and would meet him at the courthouse.
The trial judge waited until 9:50 a.m. to proceed in the event that Jackson was running late. Jackson's attorney objected on due process grounds to proceeding in Jackson's absence. Overruling the objection, the trial judge noted that they were permitted to proceed under La. C. Cr. P. arts. 761 and 832. The court also told the attorneys that a sentence would be added to the jury charges that no negative inference should be drawn from the fact that Jackson was not present in court. A writ of attachment was issued for Jackson.
Officer Hodges testified at trial. He described the chase in detail and remarked how some of the streets where the pursuit took place were dark and narrow. Hodges was concerned during the chase because some of the streets were residential. A video camera on his patrol vehicle recorded the chase and its aftermath. Portions of the video were played for the jury. Officer Herring, who assisted Hodges in the pursuit and arrest, also testified at trial.
Jackson was convicted as charged. On June 21, 2018, the State filed an habitual offender bill of information asserting that Jackson was a third-felony offender. Jackson had been sentenced to three years at hard labor after pleading guilty to aggravated battery on August 10, 1995. On March 13, 1997, Jackson was convicted of aggravated burglary. The State filed a second-felony habitual offender bill of information. On May 7, 1997, Jackson was found to be a second-felony habitual offender and was sentenced to 18 years at hard labor.
The habitual offender hearing in this matter occurred on July 11, 2018. Jackson and his attorney were present for the hearing. His attorney filed a motion for a post-verdict judgment of acquittal, which the court denied. Jackson was found to be a third-felony habitual offender and sentenced to life in prison without the benefit of parole, probation, or suspension of sentence. No motion to reconsider the sentence was filed.
On July 13, 2018, a brief hearing was held in order for the State to supplement the record from the hearing two days earlier with a letter from the Department of Public Safety and Corrections indicating that Jackson was under supervision of the Department until July 10, 2014. Jackson *1222 and his attorney were also present at this hearing. No objection was made to supplementing the record with the letter. The court clarified that no lapse or cleansing of the 10-year period had occurred.
Jackson has appealed his conviction and sentence.
DISCUSSION
Jackson argues on appeal that: (1) his sentence is unconstitutionally excessive; (2) he was denied effective assistance of counsel when his attorney failed to file a motion to reconsider sentence; and (3) the trial court erred in trying Jackson in absentia without proof in the record that he was voluntarily absent. In a pro se filing, Jackson complains about the State's brief.
Conviction in absentia
Jackson contends that the trial court erred in trying him in absentia without proof that he was in fact, voluntarily absent. He argues that without proof that he was voluntarily absent from his trial, his due process rights were implicated and he is entitled to a new trial.
La. C. Cr. P. art. 831 establishes a defendant's due process right to be present at every stage of the trial when his absence might frustrate the fairness of the proceeding. State v. Landrum , 35,053 (La. App. 2 Cir. 9/26/01), 796 So.2d 94, writ denied , 2003-0493 (La. 2/20/04), 866 So.2d 823. La. C. Cr. P. art. 831, states, in relevant part:
A. Except as may be provided by local rules of court in accordance with Articles 522, 551, and 562, a defendant charged with a felony shall be present at all of the following:
(1) At arraignment.
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made.
(3) At the calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror.
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence.
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced.
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.
The provisions of art. 831 are not absolute. State v. Williams , 50,468 (La. App. 2 Cir. 2/24/16), 190 So.3d 737, writ denied , 2016-0541 (La. 3/13/17), 216 So.3d 801, cert. denied , --- U.S. ----, 138 S. Ct. 387, 199 L.Ed. 2d 287 (2017). Exceptions, including for voluntary absence, are found in La. C. Cr. P. art. 832, which states, in part:
A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and either of the following occur: (1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial.
A jury trial commences when the first prospective juror is called for examination. La. C. Cr. P. art. 761.
In the case of a defendant who voluntarily absented himself from trial, the next inquiry is whether the defendant's attorney was present at every stage of the proceeding. If so, the defense attorney's presence was sufficient to satisfy the due process requirements of La. C. Cr. P. arts. 831 and 832. State v. Williams , supra ; State v. Landrum , supra .
*1223 In State v. Landrum , the defendant was present during the first day of trial when the jury was selected. No further proceedings were had on that day as court was adjourned until the next day for the taking of evidence. However, the defendant was absent the next morning. The trial court held a hearing to determine whether the defendant's absence was voluntary and the trial could continue in his absence. A deputy sheriff testified that an informant had told him that the defendant had "caught a bus" the evening before. However, the most compelling evidence to this Court was defense counsel's statement that he attempted to contact the defendant and his family. He could not explain his client's whereabouts. This Court also noted that the defendant failed to offer any justification for his absence either at sentencing or in his appeal. Therefore, this Court found no abuse of discretion in the lower court's finding that the defendant's absence was voluntary and the trial could continue without him.
Jackson was present with counsel when the jury was chosen and when the bill of information was read to the jury. Thus, he was present when trial commenced. After Jackson did not appear for the second day of trial, his counsel informed the court that he had gone to Jackson's home that morning and saw his vehicle in the driveway. According to his attorney, Jackson told him over the phone that he was at his aunt's home and would meet him. His attorney added that he had not heard from Jackson despite calling him as well as leaving two text messages. The trial court waited approximately an hour to see if Jackson would appear before moving forward with the trial.
Jackson argues that the trial court erred in continuing his trial in absentia without proof on the record that he was voluntarily absent. However, it was reasonable for the court to assume Jackson's absence was voluntary when he was present on the first day, but did not show for court on the second day of trial. Jackson's attorney had been in contact with him earlier that morning when Jackson changed their plans on how he would get to the courthouse. His later attempts to contact Jackson when he did not appear were unsuccessful. Furthermore, no explanation was provided for Jackson's absence. Finally, we note that Jackson's counsel was present for the remainder of the trial. Based on these circumstances, we conclude that it was not an abuse of discretion for the trial court to continue Jackson's trial in his absence. Of all the rights granted to defendants by the Constitutions of our country and state, invidiously manipulating the criminal justice system is not one of them.
Excessive sentence
Jackson argues that his life without benefits sentence as a third-felony offender is unconstitutionally excessive considering his predicate offenses of aggravated battery and aggravated burglary, the facts of this case, and that the maximum sentence for aggravated flight from an officer when no bodily injury was sustained is five years at hard labor and a fine of not more than two thousand dollars. He contends that his sentence makes no measurable contribution to acceptable goals of punishment and amounts to nothing more than purposeful imposition of pain and suffering.
No motion to reconsider sentence was filed. When a defendant fails to file a timely motion to reconsider sentence, the appellate court's review of a sentencing claim is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims , 619 So.2d 1059 (La. 1993) ; State v. Jones , 41,449 (La. App. 2 Cir. 9/20/06), 940 So.2d 61 ; State v. Duncan , 30,453 (La. App. 2 Cir. 2/25/98), 707 So.2d 164.
*1224 A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Mandigo , 48,801 (La. App. 2 Cir. 2/26/14), 136 So.3d 292, writ denied , 2014-0630 (La. 10/24/14), 151 So.3d 600. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Hollins , 50,069 (La. App. 2 Cir. 8/12/15), 174 So.3d 710.
The habitual offender law has been found constitutional in its entirety, and the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson , 1997-1906 (La. 3/4/98), 709 So.2d 672. The defendant has the burden to rebut the presumption that a mandatory minimum sentence is constitutional. This means he must clearly and convincingly show that his situation is exceptional, that because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson , supra ; State v. Henry , 42,416 (La. App. 2 Cir. 9/19/07), 966 So.2d 692, writ denied , 2007-2227 (La. 8/29/08), 989 So.2d 95.
The sentence mandated under the version of La. R.S. 15:529.1(A)(3)(b) for a third-felony offender in effect at the time of the offense was:
(3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
.....
(b) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B)... the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Jackson's underlying felony of aggravated flight from an officer and his predicate felonies of aggravated battery and aggravated burglary were all defined as crimes of violence under La. R.S. 14:2(B) at the time the crime of aggravated flight from an officer was committed. Thus, a life without benefits sentence was mandated under the habitual offender law.
In State v. Welch , 45,950 (La. App. 2 Cir. 1/26/11), 57 So.3d 442, writ denied , 2011-0423 (La. 9/16/11), 69 So.3d 1145, the defendant was adjudicated an habitual offender after being convicted of aggravated flight from an officer and sentenced to life imprisonment without benefits. His prior felony offenses were for possession of a Schedule I CDS (Ecstasy) and attempted possession with intent to distribute a Schedule II CDS (cocaine). At the time of his underlying offense, La. R.S. 15:529.1(A)(1)(b)(ii) provided that if the third felony and the two prior felonies were felonies defined as a crime of violence under R.S. 14:2(B), or as a violation of the Uniform Controlled Substances Law punishable by imprisonment for ten years or more, then the penalty was imprisonment for life without benefits. This Court found that his mandatory sentence was not unconstitutionally excessive, even though no one was hurt in the underlying offense and the two predicate felonies were nonviolent offenses.
In contrast, all three of Jackson's offenses are defined as crimes of violence under the law. Jackson, who was 41 years old at the time, endangered the public by fleeing from police at night while driving at high speeds and repeatedly ignoring traffic-control devices. Segments of the *1225 chase took place on narrow residential streets. It is of no significance that Jackson's attorney elicited testimony from the police officers that once the chase ended with Jackson's vehicle failing to negotiate a turn and crashing into a residential fence, an unarmed Jackson was cooperative and did not appear to be under the influence. No doubt he should have been. We note that Jackson did not have many options to flee on foot at the conclusion of the car chase as he was essentially trapped by the fence on one side and his passenger on the other side. Finally, we additionally note that according to the factual basis for Jackson's guilty plea to aggravated battery, his charge stemmed from his involvement in a drive-by shooting in which Jackson had been named by the victim as the shooter. Jackson has not shown that his situation is exceptional. In fact, his actions betray a complete disregard for the safety of himself or others. His life sentence without benefits is not shocking to the sense of justice.
Assistance of counsel
Jackson argues that his trial counsel rendered ineffective assistance of counsel when he failed to file a motion to reconsider sentence following the imposition of the life sentence. He urges that he should not be precluded from having his sentence reviewed due to his trial counsel's failure to file a motion to reconsider sentence, and there was no strategic reason not to file a motion to reconsider the imposition of a life sentence. He maintains that there was a reasonable probability the sentence imposed would have been different had the motion been filed.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. State v. Nixon , 51,319 (La. App. 2 Cir. 5/19/17), 222 So.3d 123, writ denied , 2017-0966 (La. 4/27/18), 239 So.3d 836.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. A claim of ineffectiveness of counsel is analyzed under the two-prong test developed in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, to establish that his attorney was ineffective, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel's deficient performance prejudiced his defense and that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland , supra ; State v. Reese , 49,849 (La. App. 2 Cir. 5/20/15), 166 So.3d 1175, writ denied , 2015-1236 (La. 6/3/16), 192 So.3d 760.
The mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. A basis for ineffective assistance of counsel may only be found if a defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different. State v. Brooks , 52,334 (La. App. 2 Cir 11/14/18), 260 So.3d 713 ; State v. Jones , 46,712 (La. App. 2 Cir. 11/02/11), 80 So.3d 500, writ denied , 2012-0016 (La. 08/22/12), 97 So.3d 356.
Jackson has not shown that had his trial counsel filed a motion to reconsider sentence, there was a reasonable *1226 probability that he would have received a sentence other than the mandatory life sentence prescribed by law. Accordingly, this argument is without merit.
Pro se supplement
Jackson filed a one-page correspondence with this Court in which he complained about the State's brief, alleging that it contained a number of falsities used by the State to support his life sentence. Jackson asks this Court to assist him, as his rights have been violated. There is no merit to this complaint.
CONCLUSION
Gabriel Jackson's conviction and sentence are AFFIRMED.